THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TIMOTHY WAYNE THOMPSON,        )
                               )
            Petitioner,        )
                               )    1:12CV334
    v.                         )    1:08CR496-1
                               )
UNITED STATES OF AMERICA,      )
                               )
            Respondent.        )

### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Petitioner Timothy Wayne Thompson ("Petitioner"), a federal prisoner, has filed two amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Docs. 40, 50.)[1] The Government has filed a response to the First Amended Petition (Doc. 45), but has not been ordered to file a response to the Second Amended Petition. Petitioner has filed a reply. (Doc. 48.) These matters are now ripe for a ruling.

Petitioner sets out two overlapping claims for relief in his First Amended Petition. First, Petitioner contends that the court's application of a two-level enhancement at sentencing for possession of a dangerous weapon pursuant to U.S.S.G.

---

[1] Unless otherwise noted, this and all further citations to the record are to the docket in the criminal case (1:08CR496-1). Petitioner submitted his first Petition on February 15, 2012 (Doc. 33), but that Petition was later ordered withdrawn in favor of Petitioner's First Amended Petition. (Order (Doc. 42).)

§ 2D1.1(b)(1) was improper. (First Am. Petition (Doc. 40) at 4 (Ground One).) Second, Petitioner contends that the Indictment failed to allege the necessary facts to support the sentencing enhancement for possession of a dangerous weapon. (Id. at 5 (Ground Two).) In his Second Amended Petition, Petitioner argues that, based on the Supreme Court's recent decision in Alleyne v. United States, his sentence could not have been enhanced based on the "dangerous weapon" enhancement because possession of a dangerous weapon was not alleged in the Indictment. (See Second Am. Petition (Doc. 50) at 4 (Ground One).)

As explained below, each of these claims lacks merit, and as such, the First Amended Petition and Second Amended Petition will be dismissed. See Rule 8, Rules Governing Section 2255 Proceedings.

I. **BACKGROUND**

In pertinent part, Petitioner was indicted for, and pled guilty to, distribution of 27.6 grams of cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). (Indictment (Doc. 1) at 1 (Count One); Plea Agreement (Doc. 18) ¶ 4.) He was sentenced to 120 months of imprisonment. (J. (Doc. 21) at 2.) In calculating this sentence, Petitioner received a two-point enhancement to his sentence because he was

found to have possessed items that closely resembled dangerous weapons, specifically a hand grenade simulator and a ground burst simulator, in connection with a drug transaction. (See Sentencing Hr'g Tr. (Doc. 25) at 4-5, 15.) During the course of several drug transactions, Petitioner sold cocaine base and grenade simulators to an informant and an undercover police officer. Petitioner objected to the enhancement, but this court overruled this objection. (Id. at 15.)

After an unsuccessful appeal, see United States v. Thompson, 426 Fed. Appx. 148 (4th Cir. 2011) (per curiam), Petitioner filed a petition under § 2255, (Doc. 33), which was later withdrawn and superseded by his First Amended Petition, (Docs. 40, 42). Petitioner then filed a Second Amended Petition after the Supreme Court handed down its decision in Alleyne v. United States, ___ U.S. ___, 133 S. Ct. 2151 (2013). (Doc. 50.) Additionally, during the pendency of these pleadings, this court reduced Petitioner's sentence pursuant to 18 U.S.C. § 3582(c)(2) to a sixty-six month term of imprisonment. (Doc. 56.) Petitioner's First Amended Petition and Second Amended Petition are now ripe for adjudication.[2]

---

[2] Because Petitioner's claims in her First Amended Petition overlap, the court's explanation in each of the following subsections also overlaps and applies equally to both claims.

**II. DISCUSSION**

　**A.　First Amended Petition: Ground One**

First, Petitioner contends that the court's application at sentencing of the two-level enhancement for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1) was improper. (First Am. Petition (Doc. 40) at 4, 14-15 (Ground One).)[3] However, after reviewing Petitioner's argument, this court finds that this claim lacks merit because Petitioner unsuccessfully presented this argument on appeal.

On appeal, Petitioner claimed that the court imposed an unreasonable sentence and that the two-level enhancement for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1) was inappropriate. See Thompson, 426 Fed. Appx. at 149-151. The Fourth Circuit rejected those arguments. Id. at 150. Thus, Petitioner is barred from attempting to re-litigate this question. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam).[4]

---

[3] All citations to page numbers refer to the page number in the bottom right-hand corner stamped during the electronic filing process and as they appear on CM/ECF.

[4] In a published opinion, the Fourth Circuit also recently ruled that a misapplication of the guidelines typically does not constitute a miscarriage of justice that would warrant § 2255 relief and this claim fails for that reason as well. See United States v. Foote, 784 F.3d 931, 939-943 (4th Cir. 2015), cert. denied, ___ S. Ct. ___, 2015 WL 2338980 (Jun. 15, 2015).

In any event, even if the court could reconsider this question, it would reach the same conclusion as the Fourth Circuit for the reasons the Fourth Circuit articulated. Specifically, the definition of "dangerous weapon" is found in the commentary to U.S.S.G. § 1B1.1. That section defines dangerous weapon as

> (i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument.

U.S.S.G. § 1B1.1, cmt. 1(D).

Upon review, the Fourth Circuit upheld the application of this enhancement, reasoning that "each simulator was labeled 'explosive' and each actually resembled the weapon it was designed to simulate. . . . [T]he warning labels on the stimulators [also] state[d] that the user should immediately throw the simulators after removing the safety caps or pulling the detonation cords." Id. at 149-50. This court agrees with and adopts this analysis from the Fourth Circuit, and as a result, even if this court could consider the merits of Petitioner's claim, that claim would fail.

Petitioner also challenges this enhancement by arguing that the weapon was not "PRESENT during the instant offense," and

-5-

that the "'simulator' transaction and the cocaine base transaction were COMPLETELY SEPARATE SCHEMES and were conducted at different times, in different locations, involving different people." (First Am. Petition (Doc. 40) at 4, 14.) However, the facts of this case do not support this argument. The Factual Basis provides that on July 28, 2008, an informant "purchased the simulators, and arranged for future discussions with [Petitioner] about the possible sale of cocaine." (Factual Basis (Doc. 17) at 1.) The subsequent deal for crack took place that afternoon between the same individuals. (Id.) The Presentence Report ("PSR") provides a more detailed account of these transactions and identifies that the subsequent sale of drugs was used to overcome the informant's dissatisfaction with the simulators that Petitioner provided. (PSR ¶ 4.) This close connection between the transactions was sufficient for this court to find that the enhancement could properly be applied. See also U.S.S.G. § 1B1.3, cmt. 9(B) (explaining when separate offenses may be considered part of the "same course of conduct" such that the offenses can be considered relevant conduct and used to calculate a defendant's sentence); infra note 7 (explaining why the various transactions involved in this case were all part of the same course of conduct or were part of a common scheme or plan). As a result, this court finds further

reason on the merits to deny Petitioner's claim, and this claim will be dismissed.[5]

**B.  First Amended Petition: Ground Two**

Petitioner's second and overlapping claim within his First Amended Petition is that the Indictment failed to allege the necessary facts to support the sentencing enhancement for possession of a dangerous weapon.  (First Am. Petition (Doc. 40) at 5, 15-16 (Ground Two).)  However, this claim is also without merit.

As the Government correctly points out, the law is well-settled that there is no requirement to allege sentencing enhancements in the indictment so long as they do not increase the applicable statutory minimum or maximum sentence.  <u>See, e.g.</u>, <u>United States v. Lewis</u>, 235 F.3d 215, 218-19 (4th Cir. 2000); <u>Lincoln v. United States</u>, Civil Action No. 4:07-70089-TLW, Criminal No. 4:03-751-TLW, 2010 WL 1052831, at *5 (D.S.C. Mar. 19, 2010); <u>Dixon v. United States</u>, Nos. 1:08CV312, 1:05CR173-1, 2009 WL 306981, at *1 (M.D.N.C. Feb. 9, 2009),

---

[5] The Fourth Circuit also addressed the reasonableness of Petitioner's sentence, stating, "The district court discussed the seriousness of trying to sell explosives in the course of a drug transaction, noted Thompson's escalating criminal history, and, while recognizing the disparity between powder cocaine and cocaine base, declined to vary in light of the seriousness of the offense. We decline to disturb the sentence as unreasonable." <u>Thompson</u>, 426 Fed. Appx. at 150.  Petitioner cannot re-litigate this claim either, and even if he could, the court would reach the same conclusions as the Fourth Circuit.

-7-

Case 1:08-cr-00496-WO   Document 58   Filed 07/14/15   Page 7 of 11

recommendation adopted, 2009 WL 2382758 (M.D.N.C. Mar. 30, 2009). The enhancement contested here did not affect the statutory minimum of 5 years or the statutory maximum of 40 years. Instead, it merely influenced the guideline range of imprisonment between that minimum and maximum sentence. In fact, the sentence imposed by this court was considerably less than the then-applicable statutory maximum sentence of 40 years.[6] See 21 U.S.C. § 841(b)(1)(B) (2010).

Accordingly, it was not necessary for the Government to allege the possession of a dangerous weapon in the Indictment before this court used that fact to help calculate the appropriate sentence. As such, this claim has no basis and will be dismissed.

**C.  Second Amended Petition: Ground One**

As noted, Petitioner has also filed a Second Amended Petition (Doc. 50), along with a supporting memorandum (Doc. 51). He raises a single new claim, invoking Alleyne v. United States, ___ U.S. ___, 133 S. Ct. 2151 (2013). In Alleyne, the Supreme Court precluded judicial fact-finding that would increase statutory minimum sentences, requiring that those facts

---

[6] It is clear from Petitioner's plea agreement that he was aware of the maximum sentence he could receive as well as the applicability of the guidelines. (Plea Agreement (Doc. 18) ¶ 2(a)-(c).) For this reason alone, any effort by Petitioner to undermine his guilty plea or to claim that he was taken by surprise in his guideline calculation fails.

-8-

be submitted to the jury.  See Alleyne, ___ U.S. at ___, 133 S. Ct. at 2155.  Based on Alleyne, Petitioner argues that he is

> "actually innocent" of the offenses of possession with intent to distribute cocaine (crack base) pursuant to 21 U.S.C. 841(a)(1), (b)(1), (B)(iii) and possession of a dangerous instrument and his sentence cannot be enhanced on Count One – and – Two and he cannot receive a[] two level enhancement for the dangerous weapon.

(Second Am. Petition (Doc. 50) at 4 (Ground One).)  This claim fails for a number of reasons.

First, Alleyne was decided after Petitioner's case became final and has not been found retroactive for use on collateral review.  See United States v. Stewart, 540 Fed. Appx. 171, 172 fn. (4th Cir. 2013) (per curiam).  Second, even setting that issue aside, Alleyne is inapplicable to these facts because Petitioner contests an enhancement set forth in the Sentencing Guidelines, not a statutory mandatory minimum.  See United States v. Anderson, 532 Fed. Appx. 373, 379 n.1 (4th Cir. 2013) ("Alleyne involves the application of mandatory minimum sentences and is not relevant to the advisory Guidelines enhancement dispute here.").  Third, Petitioner admitted to the amount of crack cocaine attributed to him under the guidelines (27.6 grams in Count One of the Indictment and 26.0 grams in

-9-

Count Two),[7] and to the sale of the grenade simulators.[8] (See Factual Basis (Doc. 17) at 1-2; Sentencing Hr'g Tr. (Doc. 25) at 31; see also First Am. Petition (Doc. 40) at 4-5, 14-16 (not disputing the conduct contained within the Factual Basis or the PSR).) Because Petitioner admitted to this conduct, this court was allowed to consider all of the relevant conduct surrounding the sale of these drug quantities, including the possession and

---

[7] Drug quantities not specified in the count of conviction, like the 26 grams of crack cocaine attributed to Petitioner under the guidelines and set forth in Count Two of the Indictment, are considered relevant conduct when they are part of the (1) "same course of conduct" or (2) "common scheme or plan." U.S.S.G. § 1B1.3(a)(2); see United States v. Ellis, 975 F.2d 1061, 1067 (4th Cir. 1992). Two or more offenses are part of a "common scheme or plan" if they involved common victims, accomplices, purpose, or similar modus operandi. U.S.S.G. § 1B1.3, cmt. 9. Two or more offenses are part of the "same course of conduct" if they are part of a single episode, a spree, or an ongoing series of offenses. Id. Here, the drug distributions in question involved the same kind of offense (distribution), the same kind of drug (crack cocaine), sold to the same person (a confidential informant), occurring within a relatively short period of time (July 28, 2008 and August 5, 2008). (See Factual Basis (Doc. 17) at 1-3.) This is sufficient to demonstrate that the transactions were either part the "same course of conduct" or part of a "common scheme or plan." See, e.g., United States v. Williams, 880 F.2d 804, 805-06 (4th Cir. 1989).

[8] See, e.g., United States v. Yancy, 725 F.3d 596, 599-600 (6th Cir. 2013) (finding the district court did not violate the defendant's Sixth Amendment rights when it sentenced him for brandishing pursuant to § 924(c)(1)(A)(ii) because the defendant had admitted to brandishing a firearm as part of his guilty plea); United States v. Harris, 543 Fed. Appx. 587, at *2 (7th Cir. 2013) (finding Alleyne does not apply where a defendant has pled guilty and admitted facts upon which the mandatory minimum penalty is based); United States v. Oliver, 544 Fed. App'x 858, 860-61 (11th Cir. 2013) (same).

-10-

sale of the dangerous weapons.  Therefore, this court did not engage in judicial fact-finding that would be prohibited by <u>Alleyne</u>.

Based on all of these reasons, this claim will also be denied.

## III. <u>CONCLUSION</u>

**IT IS THEREFORE ORDERED** that Petitioner's First Amended Motion Under § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 40) is **DENIED,** that Petitioner's Second Amended Motion Under § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 50) is **DENIED,** and that this case is **DISMISSED** without an evidentiary hearing.

A judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order. Finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor a debatable procedural ruling, a certificate of appealability is not issued.

This the 14th day of July, 2015.

/s/ William L. Osteen, Jr.
_____
United States District Judge